# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| ANGELA MCKEE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No: 1:14-cv-01218-STA-cgc |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

Plaintiff Angela McKee filed this action on behalf of Brandi R. Martin ("Claimant"), deceased, to obtain judicial review of Defendant Commissioner's final decision denying her application for disability insurance benefits under Title II of the Social Security Act ("Act"). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on November 28, 2012. On January 4, 2013, the ALJ denied the claim. The Appeals Council subsequently denied her request for review.[1] Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming,

---

[1] Claimant died on December 7, 2013, while her request for review was pending before the Appeals Council. Claimant's mother, Angela McKee, was substituted as a party and is pursuing her daughter's claim.

modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[2] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[3] and whether the correct legal standards were applied.[4]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[5] It is "more than a mere scintilla of evidence, but less than a preponderance."[6] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[7] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[8]

Claimant was born on August 3, 1976, and alleged that she became disabled beginning August 3, 2010. In her disability report, she alleged disability due to arm problems, degenerative

---

[2] 42 U.S.C. § 405(g).

[3] *Id.*

[4] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). See also *Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[5] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[6] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[7] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[8] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

disc disease, scoliosis, and depression. Claimant had previously worked as a store manager and fast food restaurant manager.

The ALJ made the following findings: (1) Claimant met the insured status requirements through December 31, 2015; (2) Claimant did not engage in substantial gainful activity after the alleged onset date; (3) Claimant had severe impairments of mild degenerative disc disease of the lumbar spine with scoliosis, mild degenerative disc disease of the cervical spine, mood disorder, and anxiety disorder; but she did not have impairments, either alone or in combination, that met or equaled the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Claimant retained the residual functional capacity to perform light work, except she could occasionally climb, balance, stoop, crouch, crawl, and kneel, and she must be allowed to sit or stand at will; due to mental impairments, she had moderate limitations in maintaining concentration and persistence but was capable of simple, one-to-three step unskilled tasks; (5) Claimant was unable to perform her past relevant work; (6) Claimant was a younger individual with a high school education on the alleged onset date; (7) transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules ("the grids") as a framework supported a finding that Claimant was not disabled whether or not she had transferable job skills; (8) considering Claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Claimant could perform; (9) Claimant was not under a disability as defined in the Act at any time through the date of this decision.[9]

---

[9] R. 21 – 30.

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[10] The claimant bears the ultimate burden of establishing an entitlement to benefits.[11] The initial burden of going forward is on the claimant to show that he or she is disabled from engaging in his or her former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[12]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[13]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[14] Here, the sequential analysis proceeded to the fifth step

---

[10] 42 U.S.C. § 423(d)(1).

[11] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[12] *Id.*

[13] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

4

with a finding that, although Claimant could not perform her past relevant work, there were jobs existing in significant numbers in the national economy that she could perform.

Plaintiff, on behalf of Claimant, argues that substantial evidence does not support the ALJ's decision. She specifically argues that the ALJ erred in the credibility assessment and in formulating the residual functional capacity finding. Plaintiff's arguments are not persuasive.

A claimant's credibility comes into question when his or her "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence."[15] To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[16] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying,"[17] although the ALJ's credibility finding must find support in the record.

In assessing Claimant's credibility, the ALJ pointed out there were significant differences between a function report Claimant completed on May 24, 2011, and another function report she completed three months later on August 25, 2011.[18] The ALJ reasoned that it was likely that, after gaining an understanding of the disability process, Claimant attempted to portray herself in

---

[14] 20 C.F.R. § 404.1520(a).

[15] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[16] *Id.*

[17] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

[18] R. 145-52, 178-85.

5

a more limiting manner in order to improve her chances of getting benefits. Plaintiff argues that the later function report reflects Claimant's increased debilitation and notes that much of the second form is incomplete.

On the first form, Claimant stated, *inter alia*, that she was limited in her ability to work because of back, neck, and arm pain and headaches.[19] On the second form, Claimant claimed she was unable to stand more than one hour due to severe back pain, she had migraines from a head injury, she was unable to turn her neck to the right due to a damaged disc, and she was very depressed.[20] On the first form, Claimant stated that her daily activities included taking medications, watching television, and most of the time doing nothing; on the second form, she stated that her daily activities included lying down with her legs elevated.[21] On the first form, Claimant stated that she cooked and cared for her children and a pet dog.[22] On the second form, she denied caring for any children or pets.[23] On the first form, Claimant stated that she prepared her own simple meals, while on the second form she denied preparing any meals.[24] On the first form, Claimant stated that she got outside every day, drove, shopped, and was able to handle money and pay bills.[25] She did not complete these questions on the second form. On the first form, she reported that her hobbies included watching television, playing board games, camping,

---

[19] R. 145.

[20] R. 178.

[21] R. 179.

[22] R. 146.

[23] R. 179.

[24] R. 180.

[25] R. 148.

horses, NASCAR, and sports with kids; on the form she completed just three months later, she reported her hobbies and interests as "nothing no more" and said she was unable to do anything.[26] On the first form, she described her social activities as including talking with friends, going out to eat, and attending church regularly.[27] On the second form, she said she went nowhere on a regular basis, and her only social activity was using a computer fifteen minutes a week.[28] In May 2011, Claimant reported that she got along fine with authority figures, but, in August 2011, she said she did not talk to anyone.[29] The Court finds that the ALJ could properly consider the inconsistencies between the two forms when assessing Claimant's credibility.[30]

In making her credibility finding, the ALJ also noted that the objective findings and treatment records during the alleged period of disability did not support the degree of limitations claimed. X-rays showed only mild degenerative changes at C5-C6 and mild wedging at T12.[31] There was no objective evidence of root compression, spinal stenosis, or other pathology that would produce the chronic incapacitating back and neck pain alleged by Claimant. Moreover, findings upon physical examination were generally unremarkable. Although Claimant exhibited some tenderness, her gait and range of motion was generally normal, and she showed only some

---

[26] R. 182.

[27] R. 149.

[28] R. 182

[29] R. 151, 184.

[30] *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013) (The ALJ observed that Johnson's answers to his disability questionnaire in June 2007 "described greater functioning" than did his hearing testimony.)

[31] R. 480-81, 534-35.

limitations in cervical range of motion.[32] An ALJ may properly consider the treatment an individual has had and whether the treatment is indicative of disability.[33]

The Court finds no error in the ALJ's credibility determination because Claimant did not provide objective medical evidence to establish the intensity and persistence of her alleged symptoms, and the record as a whole does not indicate that her condition was of disabling severity. Although Claimant presented objective medical evidence of an underlying medical condition and the ALJ found that her impairments could reasonably cause the kind of limitations alleged, Claimant's statements about the intensity, persistence, and limiting effect of her alleged symptoms were not entirely credible because they were inconsistent with the evidence of record. The ALJ carefully considered the record as a whole, including Claimant's work history and treatment history. Accordingly, the ALJ's credibility determination is supported by substantial evidence.

Next, Plaintiff complains that the ALJ's residual functional capacity finding is not supported by substantial evidence. However, Plaintiff has not pointed to any reports or opinions from a treating physician suggesting that Claimant had limitations greater than those imposed by the ALJ.

In making her findings, the ALJ considered the medical evidence, including Claimant's medical treatment records and reports of state agency medical consultants. Although the record

---

[32] R. 319, 322, 544.

[33] *See Curler v. Comm'r of Soc. Sec.*, 2014 WL 1282521 *8 (6th Cir. April 1, 2014) ("Had Curler suffered from severe pain associated with her back condition, the medical records would have revealed severe back or leg abnormalities, abnormal functioning on physical exams, recommendations for more aggressive treatment, and more significant doctor-recommended functional limitations; SSR 96-7p (" [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . .").

reflects Claimant's subjective complaints of back and neck pain, subjective statements alone do not establish disability.[34] The record fails to show functional limitations not accounted for in the ALJ's findings. Imaging showed mild degenerative changes but nothing that would support more restrictive limitations.[35] State agency medical consultants who reviewed the evidence of record even opined that Claimant could perform work at the medium exertional level, which would be consistent with an even less restrictive residual functional capacity.[36]

The ALJ noted that Claimant's complaints of back and neck pain dated back to at least 2003, yet she was able to work for many years despite her back and neck pain. For example, she worked as a manager at McDonald's until August 2010, regularly lifting up to fifty pounds and standing for six hours a day.[37] There is no objective evidence in the record to indicate that Claimant's physical impairments worsened after she left her job at McDonald's. In fact, shortly after her alleged onset of disability and after she left her McDonald's job, Claimant reported that she was doing well, and she showed normal range of motion on physical examination.[38] Moreover, Claimant's statements in June 2012 that her leisure activities included walking, horseback riding, and farming were inconsistent with a more restrictive residual functional capacity.[39]

---

[34] *See* 20 C.F.R. § 404.1529 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled . . . .").

[35] R. 25, 268-69, 319, 400, 534.

[36] R. 444, 507, 536.

[37] R. 154.

[38] R. 276-78.

[39] R. 27-28, 573.

Substantial evidence supports the weight given to the medical evidence and opinions in the record and the evaluation of Claimant's residual functional capacity. The ALJ properly determined that Claimant could perform a reduced range of light work, and Plaintiff has failed to show that Claimant was otherwise more limited.

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[40] The Commissioner may carry this burden by applying the grids[41] which direct a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills.[42] The grids take administrative notice of a significant number of unskilled jobs a claimant can perform given his or her residual functional capacity.[43]

In the present case, Claimant's ability to perform the full range of light work was eroded by additional limitations. Therefore, the ALJ asked a vocational expert a hypothetical question about an individual with Claimant's vocational profile and residual functional capacity. The vocational expert responded that such an individual could perform light, unskilled jobs as a parking lot cashier, bench assembler, and assembly press operator.[44] The vocational expert's

---

[40] *Jones*, 336 F.3d at 474.

[41] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[42] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

[43] *See* 20 C.F.R. part 404, subpart p, appendix 2, § 200.00(b); Social Security Ruling 85-15, 1985 WL.

[44] R. 49-50.

response to the hypothetical question provides substantial evidence to support the ALJ's finding that Claimant was not disabled,[45] and the decision of the Commissioner is **AFFIRMED**.

    **IT IS SO ORDERED.**

                                                  **s/ S. Thomas Anderson**
                                                  S. THOMAS ANDERSON
                                                  CHIEF UNITED STATES DISTRICT JUDGE

                                                  Date:   August 10, 2017.

---

[45] *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010).